IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TAYLOR ROSS JACOBS,** | ) |
| **Plaintiff,** | ) |
| v. | ) NO. 3:23-cv-00913 |
| **ASHLEY MELLINGER, et al.,** | ) JUDGE CAMPBELL |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 3), filed by state inmate Taylor Jacobs when he was incarcerated at the Rutherford County Jail. The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Complaint[1] under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 3) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average

---

[1] Plaintiff has also filed a Motion to Amend the Complaint (Doc. No. 5) in order to add a claim. That Motion is **GRANTED**. The additional claim is reviewed in this Order along with the allegations and claims of the original Complaint, which remains Plaintiff's operative pleading.

monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual

2

Case 3:23-cv-00913   Document 7   Filed 04/08/24   Page 2 of 9 PageID #: 32

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege: (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## B. Allegations and Claims

Plaintiff alleges that his constitutional rights were violated in the course of his arrest on October 5, 2022, when Defendants Ashley Mellinger (an officer in training with the Murfreesboro Police Department (MPD)) and Drew Stalnaker (Mellinger's "Field Training Officer and direct supervisor") arrested him on "an active warrant for violation of probation." (Doc. No. 1 at 2, 4.) At the time of his arrest, Plaintiff was under the influence of "a dangerous mix of heroin and meth," though he only "admitted to using meth in the 18 hours prior" when Defendant Mellinger asked if he had taken any drugs. (*Id.* at 3.) He needed assistance with balance while walking to Defendants' patrol car and was in a "semi-conscious state" during the ten-minute drive to the Rutherford County Jail. (*Id.* at 4.) Four times during the drive, Defendant Stalnaker asked Plaintiff if he was "okay" or "alive back there." (*Id.*) Once, Stalnaker asked if Plaintiff had any complaints or was mad at them, "referring to prior complaints Plaintiff filed against other MPD officers." (*Id.*)

3

Upon arrival at the jail, Stalnaker asked Plaintiff if he had any contraband on his person. (*Id.* at 5.) "[B]ecause he was high," Plaintiff could not recall if he had contraband or not, so he asked Defendants to search him again, as they had when they placed him under arrest. (*Id.*) Defendants declined to conduct another search because Plaintiff assured them "that he was not intentionally hiding contraband." (*Id.*) They proceeded to the booking area of the jail, where the booking deputy conducted an "intake body search" which included the removal and examination of Plaintiff's shoes. (*Id.*) When his shoes were removed, "Plaintiff noticed contraband in his shoe and immediately brought it to the attention" of Defendants and the booking deputy. (*Id.* at 6.) The contraband concealed in Plaintiff's shoe included "drug paraphernalia" and small, misdemeanor-level quantities of meth and heroin ("under .5 grams"). (*Id.*) As a result of this discovery, Plaintiff was charged with "Introduction of Contraband Into a Penal Facility, a Class D Felony." (*Id.*)

Plaintiff alleges that Defendant Mellinger subsequently executed an arrest affidavit that "recklessly omitted key facts" in an attempt to establish probable cause, including by stating that Plaintiff simply replied "no" when asked whether he had any contraband, rather than reporting that Plaintiff could not remember if he had contraband on his person and so requested to be searched by Defendants prior to arriving at booking. (*Id.* at 6–7.) Facing a felony charge as well as the probation violation charge for which he was arrested, Plaintiff was held in the Rutherford County Jail for four months. (*Id.* at 7.) He eventually pled guilty to Attempted Introduction [of Contraband] Into a Penal Facility, a Class E Felony." (*Id.* at 8.)

Plaintiff alleges that he was "exhibiting signs of a possible drug overdose" during the booking process, and that Mellinger's subsequent testimony at his preliminary hearing confirmed her "subjective knowledge" of the seriousness of his condition, in that she testified that he was asked several times before arriving at the jail whether he needed medical attention, which he

4

declined. (*Id.* at 7–8.) Plaintiff denies that he ever refused medical attention and alleges that Defendants violated MPD policy "for getting medical treatment for people who are unconscious or semi-conscious." (*Id.* at 8.)

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs; that Defendant Mellinger violated his rights to be free from unlawful arrest and malicious prosecution; and that Defendant Stalnaker failed to properly train or supervise Mellinger and otherwise acted in retaliation for Plaintiff's prior filing of grievances against other MPD officers. (*Id.* at 9–10.) Plaintiff further claims that Defendants subjected him to "False Detention." (Doc. No. 5 at 1.) He seeks an award of compensatory and punitive damages. (Doc. No. 1 at 10.)

**C. Analysis**

Plaintiff's claims of false arrest, "false detention" or imprisonment, and malicious prosecution arise under the Fourth Amendment. *See Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (citing *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010)). False arrest is a species of false imprisonment; they both involve detention in the absence of legal process. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Accordingly, false imprisonment ends "once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389. At that point, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Id.* at 390.

Here, Plaintiff appears to be challenging the legality of his arrest and initial detention on the charge to which he ultimately pled guilty—which occurred after he had already been taken into custody on an unrelated, outstanding warrant and taken for booking at the jail. In such situations —"when, at the time of his arrest and prosecution, [plaintiff] is already in custody on other

5

charges"— no constitutional deprivation results from the detention between the time of the arrest on the new charge and the institution of legal process on that charge. *Freeman v. Troutt*, No. 3:10-CV-0697, 2012 WL 5439160, at *9 (M.D. Tenn. Nov. 7, 2012) (citing cases); *see Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 682 (7th Cir. 2007) ("An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed."). Accordingly, Plaintiff's false arrest and "false detention" claims must be dismissed for failure plausibly to allege any violation of federal rights.

As for Plaintiff's claim of malicious prosecution, such a claim requires proof that "the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (quoting *Jones v. Clark Cnty.*, 959 F.3d 748, 756 (6th Cir. 2020)); *Robertson*, 753 F.3d at 616. Plaintiff alleges that he is currently litigating in state post-conviction court, seeking to have the conviction for Attempted Introduction of Contraband Into a Penal Facility set aside on grounds that there was no probable cause supporting that charge. (Doc. No. 1 at 9.) But unless and until Plaintiff wins such relief, and thus can plead and prove "the favorable termination of criminal proceedings," no claim for malicious prosecution is available to him. *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). This claim must therefore be dismissed.

In addition to his Fourth Amendment claims, Plaintiff asserts claims of deliberate indifference to serious medical needs under the Eighth Amendment and retaliation under the First Amendment. As to his Eighth Amendment claim, for a failure to provide medical treatment to rise to the level of a constitutional violation cognizable under § 1983, "a prisoner must allege acts or omissions [that are] sufficiently harmful" in light of a medical need that is sufficiently serious.

6

*Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Here, Plaintiff alleges that he was in a "semi-conscious state" as a result of "a possible drug overdose," yet Defendants transported him to the jail for booking without first seeking emergency medical care. However, he also alleges that Defendants repeatedly checked his responsiveness during the drive to the jail. And he confirms that he had a conversation with Defendants "[b]efore entering [the] booking threshold, [when] Defendant Stalnaker asked Plaintiff if he had any contraband on his person" and "assured Plaintiff that as long as he was not intentionally hiding anything . . . he would be okay," whereupon "Plaintiff assured Defendant Stalnaker that he was not intentionally hiding contraband." (Doc. No. 1 at 5.) Then, during the booking process, Plaintiff noticed the contraband concealed in his shoe and immediately brought the presence of the contraband to Defendants' attention. (*Id.* at 6.) Plaintiff's allegations thus establish that he was alert and responsive enough to not only answer the officers' questions but to make assertions that he believed would serve his best interests. Most importantly, although Plaintiff alleges that he was "exhibiting signs" of a possible overdose and suffered "severe emotional distress that required medication" as a result of having the possible drug overdose ignored (*id.* at 7, 9), he does not allege the nature or severity of any such "signs," nor does he allege any harm related to an actual drug overdose, as opposed to the mere potential for an overdose. The Complaint's allegations thus fail to support a colorable claim that Defendants were deliberately indifferent to an objectively serious medical need.[2]

---

[2] *Compare Burwell v. City of Lansing, Michigan*, 7 F.4th 456, 464 (6th Cir. 2021) (detainee "had an obviously serious medical need" where, for nearly 40 minutes, he was "bent at the waist, swaying and rocking on the bench inside his cell, grabbing his head and midsection, dropping his sandwich numerous times, and falling to the floor repeatedly," before ultimately collapsing to the ground, lying motionless, and vomiting before officers attended to him); *Border v. Trumbull Cnty. Bd. of Comm'rs*, 414 F. App'x 831, 837–38 (6th Cir. 2011) (detainee's medical need was sufficiently serious and obvious where he appeared "severely intoxicated," "huddled and slumped over," had red and glazed eyes, "had difficulty walking and staying awake," "slurr[ed] his speech," and later died from a drug overdose); *Bertl v. City of Westland*, No.

As to Plaintiff's claim of retaliation in violation of the First Amendment, the Complaint alleges that Defendant Stalnaker asked Plaintiff during the drive to the jail whether he had "any complaints this time," and told him he wanted to make sure Plaintiff was not "mad at [Defendants] for anything"—which Plaintiff construed as a reference to "prior complaints [he] filed against other MPD officers." (Doc. No. 1 at 4.) Plaintiff does not offer any other allegations in support of his First Amendment retaliation claim, but merely asserts that "Stalnaker's participation in these [other] deprivations [alleged in the Complaint]" was motivated by the desire to retaliate against Plaintiff for "filing grievances against his fellow MPD officers with the department's Office of Professional Responsibility" at some prior, undisclosed time. (*Id.* at 10.) This claim is entirely speculative and conclusory. In order to avoid dismissal, "a plaintiff's complaint must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level"; "conclusory allegations or legal conclusions masquerading as factual allegations" need not be accepted. *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016) (citations and internal quotation marks omitted). Plaintiff's retaliation claim fails to meet this standard and thus cannot proceed.

In sum, Plaintiff fails to state any plausible claim to relief against either Defendant. This case will therefore be dismissed.

### III. CONCLUSION

For the above reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

---

07-2547, 2009 WL 247907, *5–6 (6th Cir. Feb. 2, 2009) (inmate who died of severe alcohol withdrawal had "visibly serious medical condition" that "satisfied the objective component" where he was "lying face down on the floor of his cell, almost comatose, unresponsive and having seizure-like spasms").

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE